UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COLLEEN CALLEWAERT

       Plaintiff,       No. 15-cv-11942-GER-MKM

Vs.                Hon. Gerald E. Rosen

SAM'S EAST, INC.,

       Defendant,
_____/

OPINION AND ORDER GRANTING DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>

At a session of said Court, held in
Detroit, Michigan
on April 11, 2016

PRESENT: Honorable Gerald E. Rosen
United States District Judge

## I. INTRODUCTION

This diversity "slip and fall" action is presently before the Court on the Motion for Summary Judgment filed by Defendant, Sam's East, Inc. ("Sam's East"). Sam's East is the operating company of Sam's Club Stores. On August 26, 2014, Plaintiff Colleen Callewaert ("Plaintiff") slipped and fell on an icy patch in a walk-in freezer in the Sam's Club store in Canton, Michigan. Defendant now moves for summary judgment claiming it did not have a duty to warn Plaintiff of the ice in the freezer because ice in a freezer is an open and obvious danger.

1

Having reviewed and considered the parties' briefs and supporting evidence, the Court has determined that the allegations, facts and legal arguments are sufficiently addressed in these written submissions, and, therefore, oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs.

## II.     PERTINENT FACTS

Plaintiff Colleen Callewaert, a 29-year-old female, is a former employee of Proof Management, Inc. [*See* Plaintiff's Deposition , p. 10.] Proof Management is a product promotion company which sets up displays in retail establishments for various products that the suppliers of the products want to promote. *Id.* at 13. On April 26, 2014, Ms. Callewaert was assigned to the Sam's Club store in Canton, Michigan to set up a display to promote "Sevan"-brand frozen pizzas. *Id.* at 14. This was the first time Callewaert was assigned to promote Sevan frozen pizzas, and her first assignment at a Sam's Club. *Id.* Her only previous assignments had been in Kroger's and Meijers stores promoting "Body Comfort" reusable hot and cold packs. *Id.* at 13.

Callewaert arrived at the Canton Sam's Club store on April 26, 2014 at 8:00 p.m. *Id.* at 58. Upon arrival, she was met by a Proof Management co-worker, Lindsay Compo, who was going to provide Callewaert with product inventory training. *Id.* Callewaert testified that Proof Management's standard practice was that inventory be done the night before the marketing display was to be set up. *Id.* at 67.

Compo and Callewaert proceeded to a large walk-in freezer at the rear of the store to inventory the Sevan frozen pizzas that had previously been delivered to the store. *Id.* at 59-62. Prior to her arrival, Callewaert had been informed that she would be working in a freezer that day and to dress appropriately as it would be very cold inside the freezer. *Id.* at 61. Ms. Callewaert testified that "it was very cold" in the freezer, *id.* at 68, and she acknowledged that if something was spilled on the floor, it would freeze. *Id.* at 68, 79. "I mean, freezers are meant for freezing, right?" *Id.*

The entry to the freezer is walled-off from the rest of the store by a sliding metal door. Id. at 68. Inside the entryway are floor-to-ceiling plastic strips to insure that the freezer is kept cold and to prevent cold air from escaping. *Id.* at 62.

Both Ms. Callewaert and her co-worker, Ms. Compo, entered the freezer safely and without incident. *Id.* at 89. Callewaert testified that Compo entered the freezer first and she followed. *Id.* at 67. She testified that she was watching where she was walking but did not pay attention to or notice any ice or slipperiness when entering the freezer. *Id.*

The two women worked in the freezer for somewhere between a half hour and an hour during which they checked the inventory of the frozen pizzas which were stacked on crates inside the freezer[1]. *Id.* at 67. Upon completion of the inventory, Callewaert and her co-worker proceeded to exit the freezer.

---

[1] Security footage shows that Plaintiff was actually in the freezer for a shorter time period of time than the 1/2 to 1 hour indicated by Plaintiff in her deposition.

Compo exited the freezer first, entirely without incident; Plaintiff followed behind her. *Id.* at 79. Although Ms. Callewaert testified she was looking where she was walking, she admitted she was not looking for ice. *Id.* Just before reaching the doorway to exit the freezer, Callewaert slipped on what she believes was ice on the floor of the freezer, and fell backwards. *Id.* at 71. She grabbed a shopping cart that was in the freezer to brace herself during the fall. *Id.* No one came to her aid, nor did anyone witness the fall. *Id.* at 73. Plaintiff said she did not see the ice prior to her fall. *Id.* at 74. However, she testified that she felt the ice on the floor after she fell. *Id.* at 69, 74.

After exiting the freezer, Plaintiff told a hi-lo driver who was working outside the freezer about her fall. *Id.* at 73. She testified that the hi-lo driver laughed and told her, "Yeah, there's ice, that happens all of the time." *Id.* at 75.

Plaintiff then went home and did not seek medical attention that day. She went back to work at the Sam's Club the next day. *Id.* at 77.

When Callewaert returned to the Sam's Club store before 9:00 a.m. the next morning, April 27th, she immediately went to the freezer and took pictures of the area where she believed she fell the night before. *Id.* at 78. She noticed there was a patch of ice just inside the doorway of the freezer. *Id.* [2] She testified that the ice was plainly visible; she was able to see the ice just by looking at the floor. *Id.* at 83-84. She further

---

[2] In a recorded telephonic statement Plaintiff gave to Defendant in September 2014, Plaintiff described the ice on the floor of the freezer that she had photographed on April 27, 2014 as being "as long as her arm." [Callewaert 9/2/2014 Recorded Interview, Defendant's Ex. C., p. 4.]

4

testified that she had no reason to believe that the condition of the ice had changed from the night before when she fell, and the next morning when she observed it and took the pictures. *Id.* at 74,84-85. She explained, "We were the last ones in the freezer [the night before]. So I don't think anything would have changed." *Id.* at 74.

In her Complaint, Plaintiff alleges that, as a result of her fall, she sustained numerous injuries to her back and spine. Complaint at ¶ 4. She testified in her deposition that she still experiences a great deal of pain and has been to multiple doctors. [Plaintiff's Dep. at pp. 38-50].

Defendant now moves for summary judgment. Defendant does not dispute the occurrence of the slip and fall at this time. However, Defendant contends that the ice on the freezer floor was an open and obvious danger which negates Defendant's liability for Plaintiff's accident.

## III. DISCUSSION

### A. APPLICABLE STANDARDS

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56 [] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 252 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Moreover, any supporting or opposing affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(1). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks and citation omitted). The Court will apply the foregoing standards in deciding Defendant's motion for summary judgment in this case.

B.      THE "OPEN AND OBVIOUS DANGER" DOCTRINE

It is well-settled that it cannot be inferred from the mere fact that an accident has occurred that the injured person was the victim of negligence. *Daigneau v. Young*, 349 Mich. 632, 635, 85 N.W. 2d 88, 90 (1957); *Johnson v. Austin*, 406 Mich. 420, 451, 280 N.W.2d 9, 19 (1979); *Clark v. K-Mart Corp.*, 242 Mich. App.137, 140, 617 N.W.2d 729, 731 (2000), *rev'd on other grounds,* 465 Mich. 416; 634 N.W.2d 347 (2001).  Rather, in order to establish a *prima facie* case of negligence, a plaintiff must establish: (1) that the

6

defendant owed a duty to the plaintiff; (2) that the defendant breached the duty; (3) that the defendant's breach of duty was the proximate cause of the plaintiff's injury; and (4) that the plaintiff suffered damages. *Case v. Consumers Power Co,* 463 Mich. 1, 6; 615 N.W.2d 17 (2000).

In general, the duty of a premises possessor owed to the visitors of the premises is determined based on the status of the visitors. *Stitt v. Holland Abundant Life Fellowship*, 462 Mich. 591, 596–597; 614 N.W.2d 88 (2000); *Bialick v. Megan Mary, Inc.,* 286 Mich. App. 359, 362, 780 N.W.2d 599, 602 (2009). Michigan recognizes three common-law categories of persons who enter upon the land or premises of another: (1) trespasser, (2) licensee, and (3) invitee. *Stitt,* 462 Mich at 596. Where a landowner holds his premises open for a commercial business purpose, a visitor on the premises is an "invitee." *Id.* at 607.

Generally, a premises possessor owes a duty to use reasonable care to protect invitees from an unreasonable risk of harm caused by dangerous conditions on the premises. *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 516, 629 N.W.2d 384 (2001), citing *Bertrand v. Alan Ford, Inc.*, 449 Mich. 606, 609, 537 N.W.2d 185 (1995). However, this duty does not extend to dangers that are open and obvious, unless special aspects of the condition make even an open and obvious risk unreasonably dangerous. *Lugo, supra* at 517, 629 N.W.2d 384. Neither a common condition nor an avoidable condition, however, is uniquely dangerous. *Corey v. Davenport College of Business (On Remand)*, 251 Mich. App. 1, 8-9, 649 H.W.2d 392 (2002).

In *Hoffner v. Lanctoe*, 492 Mich. 450, 821 N.W.2d 88 (2012), the Michigan Supreme Court's most recent pronouncement on the "open and obvious" danger rule, the Court explained:

> Perfection is neither practicable nor required by the law, and under ordinary circumstances, the overriding public policy of encouraging people to take reasonable care for their own safety precludes imposing a duty on the possessor of land to make ordinary conditions "fool-proof." Thus, an integral component of the duty owed to an invitee considers whether a defect is "open and obvious." The possessor of land owes no duty to protect or warn of dangers that are open and obvious, because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid.

492 Mich. at 460-61, 821 N.W.2d at 94; *see also Slaughter v. Blarney Castle Oil Co.*, 281 Mich. App. 474, 477-78, 760 N.W.2d 287 (2008), *app. denied*, 483 Mich. 984 (2009) ("The logic behind the open and obvious danger doctrine is that an obvious danger is no danger to a reasonably careful person.").\

Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection. *Joyce v. Rubin*, 249 Mich. App. 231, 238, 642 N.W.2d 360 (2002); *Novotney v. Burger King Corp.)*, 198 Mich. App. 470, 474-475, 499 N.W.2d 379 (1993), *app. denied*, 445 Mich. 862 (1994). The test is an objective one -- the inquiry, thus, is not whether the specific plaintiff knew or should have known that the condition was hazardous, but rather whether a reasonable person in the plaintiff's position would have foreseen the danger. *Slaughter, supra*, 281 Mich. App. at 479, 760 N.W.2d 287, citing *Corey v. Davenport College of Business*, 251 Mich. App. at 5, 649 N.W.2d 392. In

8

making this objective inquiry, the focus is the typical user's perception and knowledge and "whether the relevant condition or feature that creates the danger associated with use is fully apparent, widely known, commonly recognized and anticipated by the ordinary user or consumer." *Glittenberg v. Doughboy Recreational Indus.,* 441 Mich. 379, 491 N.W.2d 208, 213-14 (1992). "Thus, a plaintiff's subjective knowledge is immaterial to the antecedent determination of an open and obvious danger." *Id.*

In Michigan, the open and obvious danger rule is applicable in cases involving ice and snow. *See, e.g., Hoffner v. Lanctoe, supra; Perkoviq v. Delcor Homes-Lakeshore Pointe, Ltd.*, 466 Mich. 11, 643 N.W.2d 212 (2002); *Kenny v. Kaastz Funeral Home, Inc.*, 472 Mich. 929, 697 N.W.2d 526 (2005); *Janson v. Sajewski Funeral Home*, 486 Mich. 934, 782 N.W.2d 201 (2010). In determining whether the rule should be applied, Michigan courts ask whether the particular circumstances, including all of the surrounding conditions, render an ice or snow condition open and obvious such that a reasonably prudent person would foresee the danger. *Hoffner, supra,* 492 Mich. at 463-64, 821 N.W.2d at 96-97.

With regard to the "open and obvious" status of "black ice," in particular, the surrounding circumstances are highly relevant. *Slaughter, supra,* 281 Mich. App at 483, 760 N.W.2d at 292. Because the defining characteristic of black ice "is that it is either invisible or nearly invisible, transparent, or nearly transparent," *id*, the *Slaughter* court held that to find that a black ice condition was open and obvious requires evidence that

the black ice in question (1) "would have been visible on casual inspection before the fall," or (2) that there existed "other indicia of a potentially hazardous condition." *Id.* [3] In applying the open and obvious doctrine in this context, Michigan courts "have progressively imputed knowledge regarding the existence of a condition as should reasonably be gleaned from all of the senses as well as one's common knowledge," and have frequently found black ice to be an open and obvious danger, despite its nearly transparent nature. *Kosinski v. Crosswinds Condominium Ass'n*, 2016 WL 299736 at *2 (Mich. App. Jan. 21, 2016).

---

[3] In *Slaughter*, the plaintiff slipped and fell on black ice while an invitee at a gas station. It was after midnight and the parking lot was paved black so the icy patch was not visible on casual inspection. The court, therefore, examined the record to ascertain whether other evidence of an open and obvious danger existed:

> There was no snow on the ground, and it had not snowed in a week. Before alighting from her truck, plaintiff did not observe anyone else slip or hold onto an object to maintain his or her balance. She did not see the ice before she fell, and could not readily see it afterwards. Although it was starting to rain at the time of plaintiff's fall, the danger and risk presented by a wet surface is not the same as that presented by an icy surface. Contrary to defendant's assertion that the mere fact of it being wintertime in northern Michigan should be enough to render any weather related situation open and obvious, reasonable Michigan winter residents know that each day can bring dramatically different weather conditions, ranging from blizzard conditions to wet slush, to a dry, clear, and sunny day. As such, the circumstances and specific weather conditions at the time of plaintiff's fall are relevant. We are not persuaded that the recent onset of rain wholly revealed the condition and its danger as a matter of law such that a warning would have served no purpose.

281 Mich. App. at 483-84, 60 N.W.2d at 292. Therefore, the court declined to apply the open and obvious danger rule and affirmed to trial court's denial of summary disposition. *Id.* at 484, 50 N.W.2d at 293.

For example, in *Kosinski,* the plaintiff slipped and fell on a patch of black ice on the sidewalk while walking to the parking lot of his condominium complex to get to his car to go to work in the morning. It was still dark outside and there were no lights illuminating the area. However, Kosinski said that he saw snow and ice crystals blowing in the wind. Kosinski did not see the patch of ice before he fell but he was able to feel it and see it after he fell on it. He called his girlfriend after he fell and she came to his aid. She saw the icy patch when she got there. Based on these facts, the court determined that the black ice Kosinski fell on was an open and obvious danger: there was evidence that the black ice would have been visible on casual inspection as Kosinski's girlfriend had testified that she was able to clearly observe the patch of ice after Kosinski fell, and Kosinski himself testified that he both felt the ice and could see it when he was on the ground. 2016 WL 299736 at *3. Additionally, the court found that the "wintry conditions by their nature would have alerted an average user of ordinary intelligence to discover the danger upon casual inspection." *Id.* (citation omitted).

Similarly, in *Bate v. State Farm Mutual Automobile Ins. Co.*, 2015 WL 2213727 (Mich. App. May 12, 2015), the plaintiff stopped to pump gas on a December afternoon at the defendant's gas station in Lincoln Park, Michigan and slipped on black ice when she was stepping out of the car to get to the pump. She admitted that she "did not see the ice" but testified that she "felt it when [her] hands were on it [to break the fall]." *Id.* at *1. It was a nice day and plaintiff did not anticipate any ice upon arriving at the gas station. *Id.* Plaintiff later returned to examine the site and noticed water dripping off the

flat roof over the pumps that tended to pool in a minor depression in the pavement near the spot where she had fallen. *Id.* She surmised that that water dripping off the roof must have caused the formation of black ice on the pavement where she fell.

The Michigan Court of Appeals determined that the black ice on which Ms. Bate had fallen was an open and obvious danger. The court held that "even in the absence of any accumulated snow or precipitation at the time of the accident, plaintiff is a longtime Michigan resident and should have recognized the potential for icy conditions on a freezing mid-December day." *Id.* at *4.

> While a premises possessor owes a duty to exercise reasonable care to protect invitees from unreasonable risks of harm, invitees have a concurrent and important duty to take reasonable care for their own safety. The possibility of black ice was actually known to plaintiff, and a reasonably prudent person in her position would have foreseen the risk of slipping.

*Id.*

The Michigan court also found that the open and obvious danger doctrine negated the defendant's liability in *Bath v. Brownstown Shopping Plaza, LLC*, 2014 WL 7220995 (Mich. App. Dec. 18, 2014). In that case, the plaintiff slipped on ice on a sidewalk ramp in a shopping center. After he fell, the plaintiff noticed the ice on the ground. *Id.* at *1. The temperature was below freezing that day, but the roads were clear; there had been no precipitation for at least "a couple of days," and the plaintiff observed no icicles, ice formations, or mounds of snow in the parking lot. *Id.*

12

Noting that the Michigan Supreme Court has repeatedly held that Michigan weather conditions can render black ice an open and obvious danger, the *Bath* court found sufficient "indicia of a potentially hazardous condition" to warrant application of the open and obvious danger rule. *Id.* "Bath knew the temperature was below freezing and he readily observed before his fall that the ground was 'damp.' It is reasonable to expect that an average person with ordinary intelligence would know that moisture turns to ice when temperatures are below freezing." *Id.* (citations and some internal punctuation omitted).

In another black ice case, *Wright v. PNC Financial Serv. Group, Inc.*, 2014 WL 7003901 (Mich. App. Dec. 11, 2014), the Court of Appeals reversed the trial court and held that the open and obvious danger rule applied. In that case, the plaintiff, who lived in Michigan for many years and who was aware of the dangers Michigan winters present, fell on a patch of ice in a bank parking lot. Although the plaintiff testified he did not see the ice patch before he fell, an assistant bank manager testified that he could see it and that the plaintiff would have eventually seen it if he was watching where he was walking, and he would have been able to see it before stepping on it. Further, although it was a sunny day and the conditions were not wintry, the temperature was below freezing and there was nothing covering the ice to prevent it from being seen. Based on the foregoing, the court determined that there was no reasonable support in the record for a claim that the ice was not open and obvious. *Id.* at *2. *See also, Zyrek v. Costco*

*Wholesale Corp.*, 2014 WL 2933822 (Mich. App. June 26, 2014) (black ice determined to be open and obvious where though the plaintiff did not see the ice before he fell, he was able to see it when he got up and looked down at the ground, and photographs submitted to the trial court showed that the ice was visible upon casual inspection); *Operhall v. Home Depot USA, Inc*., 2015 WL 1952263 (E.D. Mich. Apr. 29, 2015) (finding sufficient indicia of a potentially hazardous condition to render a patch of black ice an open and obvious danger where, although there was no snow on the roads or in the parking lot, there was snow on grassy areas, the temperature was only slightly above freezing, and the plaintiff testified that he observed a store employee holding an orange bucket of salt which plaintiff saw him applying when he was getting up from the ground); *Womak v. Wal-Mart Stores, Inc.*, 2016 WL 1242438 (E.D. Mich. Mar. 30, 2016) (based on open and obvious danger rule, defendant found not liable for plaintiff's slip and fall on wet floor at entrance to store because a reasonable person in plaintiff's position would have known the entrance to the store might be wet since it had been raining, the plaintiff testified the parking lot was wet, and it was misty when she went into the store).

  In this case, under the objective standard, a reasonable person in Plaintiff Callewaert's position would have been able to discover the danger and risk of slipping on an icy floor in a walk-in freezer upon casual inspection. As the court noted in *Slaughter v. Blarney Castle Oil Co.*, in applying the open and obvious danger doctrine, Michigan

courts impute knowledge regarding the existence of a condition "as should reasonably be gleaned from all of the senses as well as one's common knowledge" of the hazards presented under the circumstances. 281 Mich. App. at 479.

Here, Ms. Callewaert knew before she got to the Sam's Club store that she would be working in a freezer. She admitted that she knew things freeze in a freezer and that ice could be expected to be found there. Though Plaintiff testified that she did not see the ice before she fell, she admitted that she felt the ice when she was on the ground. She further admitted in her deposition that there was nothing obstructing her view as she walked to exit the freezer; she would have seen the ice had she simply looked down.

Plaintiff also testified that the ice was plainly visible the next morning -- less than 11 hours after her accident -- when she went to take pictures of the site. She testified she was able to see the ice then just by looking at the floor. She further testified that she had no reason to believe that the condition of the ice had changed from the night before when she fell, and the next morning when she observed it and took the pictures: "We were the last ones in the freezer [the night before]. So I don't think anything would have changed." [Plaintiff's Dep. at 74].

Viewing all of these factors, the Court concludes that the evidence presented establishes that the ice on the floor of the walk-in freezer was an open and obvious danger.

Plaintiff also argues that this case presents "special aspects" which make the open and obvious danger rule inapplicable.

In *Bertrand v. Alan Ford, Inc.*, *supra*, the Michigan Supreme Court carved out an exception to the general rule of non-liability for open and obvious dangers where there are unusual or "special aspects" of the condition which make the danger unreasonable despite its obviousness. 449 Mich. at 613. However, the Michigan Supreme Court subsequently made clear that, "As an exception to an exception, this [special aspects] rule must remain narrowly drawn and be applied with restraint." *See Singerman v. Municipal Services Bureau, Inc.*, 455 Mich. 135, 140, 565 N.W.2d 383 (1997).

In *Hoffner v. Lanctoe, supra*, the Michigan Supreme Court re-emphasized that the "special aspects" exception is an extremely narrow one:

> [E]xceptions to the open and obvious doctrine are, and are intended to be, limited. The touchstone of the "special aspects" analysis is that the condition must be characterized by its *unreasonable risk of harm*. Thus, an "unreasonably dangerous" hazard must be just that -- not just a dangerous hazard, but one that is unreasonably so. And it must be more than theoretically or retrospectively dangerous.

492 Mich. at 455-56 (emphasis in original).

> Under this limited exception, liability may be imposed only for an "unusual" open and obvious condition that is "unreasonably dangerous" because it "present[s] an extremely high risk of sever harm to an invitee" in circumstances where there is "no sensible reason for such an inordinate risk of severe harm to be presented."

*Id.* at 462 (quoting *Lugo v. Ameritech Corp., Inc.*, 464 Mich. at 518, 629 N.W.2d 384).

There are only two types of situations when the "special aspects" of an open and obvious hazard may give rise to liability: "(1) when the danger is *unreasonably dangerous* or (2) when the danger is *effectively unavoidable*." *Hoffner* at 463. (Emphasis in original; enumeration added). "*In either circumstance*, such dangers are those that give

16

rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided and thus must be differentiated from those risks posed by ordinary conditions or typical open and obvious hazards. Further, we have recognized that neither a common condition nor an avoidable condition is uniquely dangerous." *Id*. (footnotes and internal punctuation omitted; emphasis in original).

Specifically regarding effectively unavoidable hazards -- which is what Plaintiff here argues -- the *Hoffner* court stated:

> The "special aspects" exception to the open and obvious doctrine for hazards that are effectively unavoidable is a limited exception designed to avoid application of the open and obvious doctrine **only when a person is subjected to an unreasonable risk of harm**. Unavoidability is characterized by an *inability to be avoided*, an *inescapable* result, or the *inevitability* of a given outcome. Our discussion of unavoidability in *Lugo* was tempered by the use of the word "effectively," thus providing that a hazard must be unavoidable or inescapable *in effect* or *for all practical purposes*. Accordingly, the standard for "effective unavoidability" is that a person, for all practical purposes, must be *required* or *compelled* to confront a dangerous hazard. As a parallel conclusion, situations in which a person has a *choice* whether to confront a hazard cannot truly be unavoidable, or even effectively so.

492 Mich. at 468-469 (footnotes omitted; some emphasis added; most emphasis in original). *See also Bullard v. Oakwood Annapolis Hospital*, 308 Mich. App. 403, 864 N.W.2d 591 (2014) ("An effectively unavoidable hazard … "must truly be, for all practical purposes, one that a person is required to confront under the circumstances. Put simply, the plaintiff must be 'effectively trapped' by the hazard." *Id.* at 412 (internal citations omitted.)); *Stimson v. GFI Management Serv., Inc.*, 498 Mich. 927, 871 N.W. 2d 207 (2015) (for an unreasonably dangerous hazard to be "effectively unavoidable," it must be essentially "inescapable." *Id.*)

17

The foregoing authorities demonstrate that there is a high threshold for a condition to be considered unavoidable. Applying these authorities in this case, the court concludes that the icy condition near the doorway of the walk-in freezer does not meet this threshold.

Both Ms. Callewaert and her co-worker, Ms. Compo, managed to avoid slipping on the ice when entering the freezer. *See* Plaintiff's Dep. p. 68. Further, Plaintiff has not raised any difficulty with slipping while working in the freezer. Additionally, just moments before Ms. Callewaert fell, her co-worker managed to avoid the hazard and exit the freezer safely and without incident. *Id.* at 69. The danger, thus, was clearly avoidable as both Ms. Callewaert and her co-worker managed to avoid it on the way in and Ms. Callewaert's co-worker managed to avoid it on the way out.

Further, Ms. Callewaert testified that the ice she observed where the incident occurred was only about the size of her arm. This is consistent with the photograph she took of the site. Ms. Callewaert could easily have stepped over the ice in order to avoid the fall. In sum, there was no unreasonable risk nor was it unavoidable.

Plaintiff contends that Defendant should have taken steps to avoid the hazard and has provided a hazard analysis done by Steven J. Ziemba C.M.P, a safety consultant. Ziemba states in his affidavit that conditions like this, where a patch of ice forms inside a freezer door, are not unusual and that a rubber mat with holes could have avoided the hazard. [Affidavit of Steven J. Ziemba, p. 3]. However, the standard to be applied here is whether or not the danger was open and obvious, and if it is, whether there were any

special aspects present. Just because a condition is common or avoidable does not mean it is uniquely or unreasonably dangerous. *See Corey v. Davenport College of Business,* 251 Mich. App. At 8-9. Whether or not the *defendant* could have avoided the harm is not at issue where the defendant owes no duty to the plaintiff *ab initio*.

For all of the foregoing reasons, the Court finds that, by application of the open and obvious danger rule, Defendant is entitled to summary judgment as a matter of law.

## CONCLUSION

For the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment **[Dkt. #15]** is GRANTED and Plaintiff's case accordingly, is DISMISSED, in its entirety, with prejudice.

Let Judgment be entered accordingly.


Dated: April 11, 2016                    s/Gerald E. Rosen
                                         United States District Judge

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 11, 2016, by electronic and/or ordinary mail.

                                         s/Julie Owens
                                         Case Manager, (313) 234-5135